IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RENEE W. BYRD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 04-1554-SLR |
| THE MAY DEPARTMENT STORES CO., | ) ) ) |
| Defendant. | ) |

Renee W. Byrd, Newark, Delaware. Pro se Plaintiff.

Daniel P. Bennett, Esquire, Heckler & Frabizzio, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: October 𝟚𝟟 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On December 23, 2004, Renee W. Byrd, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), filed the present action against The May Department Stores Company ("defendant"). (D.I. 2) Plaintiff alleges discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. ("Title VII"). The court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1331. Currently before the court is defendant's motion for summary judgment. (D.I. 18) For the reasons that follow, defendant's motion is granted.

## II. BACKGROUND[1]

Plaintiff, an African American woman, was employed by Strawbridge's department store for approximately 22 years. (D.I. 24) She began as a seasonal employee, but worked her way up to a manager position for the Estee Lauder line of cosmetics. (D.I. 20, ex. A at 46) Defendant became plaintiff's employer in 1996 when the company bought a group of stores, including the

---

[1] Through her complaint and other pleadings, plaintiff has not provided the court with a thorough explanation of the facts underlying her cause of action. In fact, the only documents filed by plaintiff are the initial complaint and a one paragraph response brief to defendant's motion for summary judgment. (D.I. 2, 24) In addition, plaintiff did not engage in any written or oral discovery. (D.I. 18 at 1) As a result, the court has used information and exhibits provided by defendant in order to develop the factual background.

Strawbridge's in Exton, Pennsylvania, where plaintiff was working as a counter manager for Estee Lauder.[2] (D.I. 20, ex. A at 46-48) In 1998, plaintiff became pregnant and wanted to move closer to her home in Delaware, so she transferred to an available furniture sales position at the Strawbridge's in the Concord Mall in Wilmington, Delaware. (Id. at 47-48)

On Friday, February 27, 2004, plaintiff was working in the furniture department along with several other Strawbridge's employees.[3] (Id. at 78) The employees were concerned that a certain rug in the department would trip customers and were gathered around the rug trying to come up with a solution. One employee, J.D. Fleisher ("J.D."), jokingly put books on the corner of the rug as a makeshift remedy and pretended to trip over them. (D.I. 20, ex. 4) Plaintiff responded to this act by saying "only if that really happen[ed]." (Id.)

The group gathered around the perimeter of the rug and readjusted it so that it would not present such a hazard to unsuspecting customers. (D.I. 20, ex. A at 78) Following this remedial measure, plaintiff went back to her desk and sat down

---

[2]Plaintiff lived in Delaware and commuted to the Exton store which was "approximately [one] hour" away by car. (D.I. 20, ex. A at 47)

[3]The other employees working in the furniture department that day included: J.D. Fleisher, Jack Doyle, Pat Parsons, and a woman named Shirley. Shirley's last name is not apparent from the record.

2

sideways on her chair. Shortly thereafter, J.D. came up behind plaintiff and hit her in the back of the head with a notebook.[4] (Id.) As a result, plaintiff's mouth struck the back of her chair.[5] (Id. at 79) J.D. began to chuckle; plaintiff stated that, at this point, she "honestly lost it." (Id.) Plaintiff then punched J.D. two or three times in the face.[6] (Id.; see also D.I. 20, Ex. D)

A few hours after the incident, plaintiff was approached by the store's Human Resources Manager, Veronica Watson, who was attempting to determine what had happened. (D.I. 20, ex. A at 93, ex. B) Ms. Watson took statements from both plaintiff and J.D., and she faxed the statements to Sally Madden, Manager of Associate Relations, at the company's central offices in Arlington, Virginia. (D.I. 20, ex. B) Both plaintiff and J.D. were suspended the following Monday, March 1, 2004, and both were terminated on Thursday, March 4, 2004. (D.I. 20, ex. A at 98-

---

[4] There is some question about the degree of force with which J.D. hit plaintiff. J.D. claims that he "tapped her lightly." (D.I. 20, ex. C) An eyewitness, Pat Parsons, stated that "the tap on [Renee's] head was very light, but could have startled [her]." (D.I. 20, ex. F)

[5] Plaintiff contends that the impact from this hit caused her to "chip [her] tooth" and that she experienced "throbbing for weeks." (D.I. 20, ex. A at 82, 85)

[6] The record does not make clear whether plaintiff was sitting or standing when she hit J.D. (Id. at 88) Plaintiff claims that "[she] reacted without thinking by hitting him back sideways." (Id. at 95)

100, ex. B at 2)  Diane Rubin, Vice President and Director of Labor and Employment Relations, and Bruce Kelso, Senior Vice President of Human Resources, made the decision to terminate the two employees.  (D.I. 20, ex. E at 1)

Plaintiff claims that she was told the reason for her termination was "zero percent tolerance . . . for hitting or pushing."[7]  (Id. at 67)  She contends that the real reason for her termination was based on her race in violation of Title VII.  (D.I. 2 at 3)

### III.  STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

---

[7]The Strawbridge's employee handbook states, in pertinent part, that:  "[The following] violations may result in immediate termination without prior warning: . . . . (13) Inappropriate or disorderly conduct while on company time or company property. This includes, but is not limited to, horseplay, fighting, threatening violence, and creating a nuisance or disturbance." (D.I. 20, ex. 1 at 34)  Plaintiff signed an Associate Acknowledgment form stating that she had received and understood the policies in the employee handbook.  (D.I. 20, ex. A)  A violation of such policy is subject to "immediate termination without prior warning."  (D.I. 20, ex. E at 2)

4

"Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

5

With respect to summary judgment in discrimination cases, the court's role is "'to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.'" Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987)).

## IV.  DISCUSSION

Plaintiff alleges that defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, and that defendant's reasons for terminating her employment were racially motivated.[8]  Defendant contends that plaintiff cannot make out a prima facie case of discrimination and, furthermore,

---

[8] The anti-discrimination provision of Title VII provides:

> It shall be an unlawful employment practice for an employer — (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

6

that the company had a legitimate reason for terminating her employment. (D.I. 18 at 2)

Claims brought pursuant to Title VII are analyzed under a burden-shifting framework; if plaintiff makes a prima facie showing of discrimination, the burden shifts to defendant to establish a legitimate, nondiscriminatory reason for its actions. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If defendant carries this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendant's proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc). In the case at bar, the court need not engage in an extensive burden shifting analysis because plaintiff has not presented facts sufficient to state a prima facie case for her Title VII claim.

Generally, to state a disparate treatment in employment claim under Title VII, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act." EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). First, plaintiff must state a prima facie case of race discrimination. See McDonnell Douglas, 411 U.S. at 802. She can accomplish this by proving that: (1) she is a member of a protected class; (2) she

7

suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000) (citing Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)); see also Berry v. E.I. DuPont de Nemours & Co., 625 F. Supp. 1364, 1377 (D. Del. 1985) ("A plaintiff may establish a [prima facie] case of discrimination by showing that other similarly-situated employees of a different race were treated differently from the plaintiff.").

Once the plaintiff has established a prima facie case of racial discrimination, "the burden shifts to the [employer] 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Jones, 198 F.3d at 410 (quoting McDonnell Douglas, 411 U.S. at 802). "Finally, should the [employer] carry this burden, the plaintiff then must have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Id. at 410 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). Throughout the court's analysis, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all

times with the plaintiff." Id. (citing Burdine, 450 U.S. at 253).

Plaintiff meets the first two requirements of the prima facie case. As an African American, she is a member of a protected class, and her employment was terminated, thus constituting an adverse employment action. Accordingly, in order to complete her prima facie case of discrimination, plaintiff need show that similarly-situated individuals outside the protected class were treated differently. In support of this contention, plaintiff cites to two instances where employees engaged in similar conduct and were not terminated for their actions.[9]

The first incident cited by plaintiff involves a fight between two employees named "Larry" and "Mike," both of whom are minorities.[10] (D.I. 20, ex. A at 116-20) Plaintiff claims that she witnessed these two men fighting in the mall area just outside of the store, and that neither of them were fired. (Id. at 119) Plaintiff did not report this incident to management, however; in fact, she did not know whether any member of

---

[9] Plaintiff alludes to the following two arguments in her deposition transcript; however, neither are included in any of plaintiff's pleadings and there is no objective evidence of record relating to them.

[10] Plaintiff describes Larry's race as "Spanish," and Mike's race as "black." (D.I. 20, ex. A at 72, 119)

management ever received notice of this incident. (Id. at 119-20)

Plaintiff relays another incident in support of her claim of discrimination in which a white employee, Lori, pushed her in 1999 and was not fired.[11] On this occasion, plaintiff alleges that she walked to the back corner of the store in order to get a price tag off of a sofa. (Id. at 120) Lori's desk was located in this area, and she was on the phone when plaintiff approached. (Id.) According to plaintiff, Lori was on a personal phone call and told plaintiff "don't come back here." (Id.) When plaintiff did not respond but merely walked past her desk in order to get the price tag, Lori "literally got up and pushed [plaintiff] as hard as she could." (Id. at 121) Plaintiff reported the incident to her manager, Randy Schifiano. Mr. Schifiano apparently spoke with Lori following the incident and, shortly thereafter, plaintiff received an "apology letter" from Lori "saying she was sorry." (Id.) With respect to this alleged incident, plaintiff claims racial discrimination "because Lori is a white woman who pushed me. Nothing seems to happen to her, all the wrongdoings that I know that was in her file. But as soon as [plaintiff], the black woman, does one thing and has an excellent file, [she] was terminated [sic]." (Id. at 114)

---

[11] Lori's last name is not available from the documents on record.

Even assuming that the incidents identified by plaintiff in her deposition occurred as described by plaintiff, the court concludes that plaintiff has failed to demonstrate that her termination occurred under circumstances that give rise to an inference of unlawful discrimination.  In the first instance, it is significant to note that, with respect to the incident at bar, both she and J.D. (a white male) were dismissed. With respect to the incident involving "Larry" and "Mike", both employees were described by plaintiff as being in a protected class; there is no indication of record that any level of management ever knew about the altercation or what, if any, adverse employment action followed.  Finally, with respect to the altercation between plaintiff and "Lori", there is no indication of record that the decision-makers in that instance were the same as those who terminated J.D. and plaintiff.  Moreover, Lori's alleged conduct (a "push" that required plaintiff to "catch her balance") is quantitatively different from the repeated punches plaintiff threw at J.D. and the injury caused by plaintiff's conduct (a black eye).  (See D.I. 20, ex. D)

The court finds that plaintiff has failed to meet her burden of proving a prima facie case of racial discrimination.  There are no genuine issues of material fact in this regard. Defendant's motion for summary judgment is granted.

V. CONCLUSION

11

For the reasons stated above, defendant's motion for summary judgment is hereby granted.  An appropriate order shall issue.